UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Zurich American Insurance Co.,

    Plaintiff,

v.

Mack Industries, Inc.,

    Defendant.
_____/

Case No. 14-cv-14244

United States District Court Judge
Gershwin A. Drain

United States Magistrate Judge
Mona K. Majzoub

**Opinion and Order Granting Defendant's Motion for Summary Judgment [#21]**

## I. Introduction

Zurich American Insurance Company ("Plaintiff") commenced this action in September of 2014 against Mack Industries, Inc. ("Mack" or "Defendant") in state court. *See* Dkt. No. 1 (Exhibit 1). The action was removed to Federal Court on November 4, 2014. *See* Dkt. No. 1. The Complaint seeks to enforce a claim for Contractual Indemnity. *Id.* On September 18, 2015, Defendant filed a Motion for Summary Judgment. *See* Dkt. No. 21. A hearing was held on November 23, 2015. For the reasons discussed herein, the Court **GRANTS** the Motion.

## II. Background

In the Spring of 2009, Walter Toebe Construction Company ("Toebe") contacted Mack Industries and requested the production of concrete panels. *See* Dkt. No. 21 at 17 (Pg. ID No. 95). Mack Industries began preliminary work on the project. Dkt. No. 23 (Exhibit B) (Pg. ID No. 159). In May of 2009, Toebe sent the Defendant a Purchase Order ("the PO") for the concrete panels. *See* Dkt. No. 23 (Exhibit A) (Pg. ID No. 152). On the back page of the PO was an indemnity clause that read:

> 12. **Indemnification.** To the fullest extent permitted by applicable law, Seller shall defend, indemnify and hold harmless Buyer, Buyer's successors and assigns, and the owner of the project, against all damages, claims or liabilities and expenses (including attorneys' fees and other professional fees, settlements and judgments) arising out of or resulting in any way from a defect in the supplies purchased hereunder, or from any negligent or wrongful act or omission of Seller, its agents, employees or subcontractors, or any breach or failure by Seller to comply with any of Seller's representations or other terms and conditions of this order.

*Id.* at Pg. ID No. 153.

The Defendant, however, did not sign this version of the PO. Instead, the Defendant continued to produce the concrete. *See* Dkt. No. 23 at 14 (Pg. ID No. 126). Apparently the panels were delivered in the early fall of 2009. *See id.* The PO was still not signed.

Richard L. Browand, a Mack Industries employee, was fatally wounded while transporting the concrete panels to the construction site. Dkt. No. 21 at 5 (Pg. ID No. 83). Mr. Browand's estate subsequently filed a wrongful death action against Toebe. *Id.* Plaintiff Zurich was Toebe's insurer in that litigation. *Id.* Toebe settled the matter with Mr. Browand's estate for about $950,000 on September 17, 2012. Dkt. No. 23 at 16 (Pg. ID No. 128).

On December 29, 2009, Toebe informed Mack that it was withholding payment until Mack submitted a signed copy of the Purchase Order. Dkt. No. 21 at 7 (Pg. ID No. 85). The next day, Mack signed a copy of the PO, but only after crossing out and initialing the indemnification provision. *Id.* On January 20, 2010, Toebe Construction informed the Defendant that its effort to modify the contract was expressly rejected. Dkt. No. 23 at 16 (Pg. ID No. 128). Toebe tendered the payment for Mack's work, but expressly pursuant to the original PO. *Id.* Plaintiff Zurich then commenced this action to recover under the indemnity provision.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) "directs that summary judgment shall be granted if 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### IV. DISCUSSION

There are several issues before the Court in this Motion, but the case is largely one of classic Contract Law. When boiled down, the Court must find if: 1) the parties have a contract; and 2) if so, what are its terms?

The arguments center around the validity of the Indemnity clause found in the Purchasing Order sent by Toebe to Mack Industries. Because the PO was unsigned, the primary arguments surround whether the clause is subject to the Statute of Frauds and whether the PO satisfies the Statute of Frauds. Secondarily, the parties also dispute the actual formation of the Contract itself.

#### A. The Indemnity Provision At Issue is Not Within the Statute of Frauds

The first issue that must be addressed is the applicability of the Statute of Frauds. If the indemnity provision of the PO is subject to the Statute of Frauds, then the Defendant's Motion

should be granted because the Plaintiff has not produced an acceptable writing to enforce the provision.

The Defendant argues that because the indemnity provision is a surety provision, it must be evidenced by a writing in order to be enforceable under MCL § 566.132(1)(b). *See* Dkt. No. 21 at 9 (Pg. ID No. 87). The Plaintiff argues that the indemnity provision is not a surety, but instead is a direct indemnification not covered by the Michigan Statute of Frauds. *See* Dkt. No. 23 at 18 (Pg. ID No. 130).

    *a. The Definition of a Surety*

Under Michigan Law, some contracts must be evidenced by a signed writing in order to be enforceable. One such type of contract is a surety contract:

> (1) In the following cases an agreement, contract, or promise is void unless that agreement, contract, or promise, or a note or memorandum of the agreement, contract, or promise is in writing and signed with an authorized signature by the party to be charged with the agreement, contract or promise:
> …
>    (b) A special promise to answer for the debt, default, or misdoings of another person.

MCL § 566.132(1)(b).

The statute codifies the settled law that a promise to pay the debt of another for which, after the promise, the other still remains liable, must be in writing in order to be enforceable. *Pfaff v. Cummings*, 67 Mich. 143, 34 N.W. 281 (1887). Generally, "another" refers to a third party other than a contracting party. *See Bonebright v. Pease, Denio & Pierce*, 3 Mich. 318 (1854); *see also Boyer v. Soules*, 105 Mich. 31, 35, 62 N.W. 1000, 1001–02(1895) (explaining sureties as an agreement to cover the debt of a third party). Under Michigan law, a promise by B to A to pay A's debts is not covered under the statute of frauds. *Tri-Cty. Int'l Trucks, Inc. v. Hills' Pet Nutrition, Inc.*, No. 255695, 2005 WL 2757473, at *5 (Mich. Ct. App. Oct. 25, 2005).

   *b.*  *The Indemnity Clause is Not a Surety*

  Here, the PO's indemnification clause would require Mack Industries to "defend, indemnify and hold harmless Buyer, Buyer's successors and assigns, and the Owner of the Project, against all damages, claims or liabilities and expenses." Dkt. No. 23 (Exhibit 2 at ¶ 12) (Pg. ID No. 153). Therefore, the indemnification is not a promise to pay the debts for a third party, but instead a promise to pay the debts of the contracting party. Accordingly, the agreement to indemnify likely does not fall under the Statute of Frauds, and can be enforced orally.[1]

 **B.**  **The Parties Created An Oral Contract**

  In Michigan, before there can be a legally enforceable contract obligation, there must be an offer and an acceptance. *Kloian v. Domino's Pizza LLC*, 273 Mich. App. 449, 452 (2006) (citing *Pakideh v. Franklin Commercial Mortgage Group, Inc.*, 213 Mich. App. 636, 640 (1995)). Assent to an offer may be indicated by acts as well as by words. *Kvaerner U.S., Inc. v. Hakim Plast Co.*, 74 F. Supp. 2d 709, 714 (E.D. Mich. 1999). The general rule is that silence alone will not constitute a valid acceptance. *Turner Associates, Inc. v. Small Parts, Inc.*, 59 F. Supp. 2d 675, 681 (E.D. Mich. 1999). A contract for a sale of goods for the price of $1,000 or more is not enforceable unless there is a writing signed by the party against whom enforcement is sought. MCL § 440.2201(1). A contract that does not satisfy the requirements of subsection (1) of MCL § 440.2201 is enforceable "if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances that reasonably indicate that the

---

[1] Defendant advances, as a secondary argument, that because this was a contract for a sale of goods worth more than $1,000, that the entire contract is unenforceable under the Statute of Frauds. *See* Dkt. No. 28 at 3 (Pg. ID No. 260). This argument is flawed. First, because it appears that the Defendant was manufacturing the concrete specifically for the Toebe Construction project, the agreement would fall underneath the special-manufacturing exception to the Statute of Frauds. MCL § 440.2201(3)(a). Second, the Defendant already performed. Thus, this argument can no longer be advanced. *See* MCL § 440.2201(3)(c).

-5-

goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement." MCL § 440.2201(3)(a).

### a. The Offer

"An offer is defined as the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." *Kloian,* 273 Mich. App. at 453. The legitimacy of an offer revolves around the particular facts pertaining to the specific transaction. *In re Costs and Attorney Fees*, 250 Mich. App. 89, 97 (2002). In general, a court will look to the language of the proposal, then consider any prior communications coupled with the circumstances surrounding the bargain. *Patrick v. U.S. Tangible Investment Corp.*, 595 N.W.2d 162, 167 (1999).

Here, the Defendant has provided evidence that there were communications that happened between Toebe and Mack before the PO was ever released:

> Q: Okay. And the purchase order in and of itself that you sent in this case was sent after you had already requested Mack to start getting drawings together regarding this specific project; true?
>
> A: Yes.

Dkt. No. 21 at 18 (Pg. ID No. 96). Apparently the parties verbally agreed upon a few terms, such as price and quantity, before the PO was sent. *Id.* There may have also been discussion of a timetable for delivery. *Id.* at 19 (Pg. ID No. 97).

However, the parties had not discussed issues regarding choice of law, insolvency, insurance, warranties, and (importantly) indemnification. *Id.* at 19–20 (Pg. ID No. 97–98). This begs the question of whether the prior conversations were substantive enough to constitute an offer. The parties have not given much in the way of facts regarding the depth of these

conversations in their briefs.[2] However, given the deposition testimony Jeffery Stover (provided above), of Toebe Construction, it appears that there was a "manifestation of willingness to enter into a bargain." Therefore, the first offer was made *before* the Purchase Order was sent.

### b. The Acceptance

Now the Court must analyze acceptance. An offer for goods does not amount to a contract binding the offeror until some act is done in reliance on it by the offeree, or until it is accepted. *Goodspeed v. Wiard Plow Co.*, 45 Mich. 322, 7 N.W. 902 (1881). A contract for goods may invite acceptance "in any manner and by any medium reasonable in the circumstances," unless otherwise "unambiguously indicated by the language or circumstances." MCL § 440.2206(1)(a).

Here, once again, the parties don't provide much in the way of facts with regard to events prior to the PO being sent in May of 2009. There is evidence in the record that the Defendant began working on the project before the PO was sent in May. Dkt. No. 23 (Exhibit B) (Pg. ID No. 159). As Betsy Mack Nespeca of Mack Industries testified at her deposition:

> The commencement of shop drawings, I believe happened prior to a purchase order in the best interest of lead time. You know, there are things to be ordered. There are things to be approved and the hard time-line of completing the job doesn't change.

*Id.*

Mack's commencement of work was done in reliance on the communication with Toebe, and thus Mack accepted the oral contract.

---

[2] The Defendant only provides excerpts of the depositions, and Plaintiff apparently pretends that these conversations did not take place at all.

### C. The Indemnity Clause Is Not Enforceable

Because the contract was accepted orally, the first PO sent would no longer serve as an offer, but instead as a confirmation of the existing contract containing additional terms. *Power Press Sales Co. v. MSI Battle Creek Stampin,* 238 Mich. App. 173, 179 (1999) (finding invoices sent after the formation of the contract to be confirmations). "MCL 440.2207; MSA 19.2207 controls the dispute over whether indemnification became an additional term of the parties' oral agreement on the basis of its inclusion in Plaintiff's written confirmation," the PO. *Id.* The statute provides:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> *(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:*
>
> *a.* The offer expressly limits acceptance to the terms of the offer;
>
> *b. They materially alter it; or*
>
> *c.* Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

MCL § 440.2207 (emphasis added). "The critical question in this case is whether the additional indemnification term . . . materially altered the parties' oral agreement." *Power Press Sales Co.*, 238 Mich. App. at 180.

This exact issue was analyzed in depth in *Power Press*. The Michigan Court of Appeals found that the "under Michigan law an indemnity clause should be deemed a material alteration." *Id.* at 181. Therefore, in order for the indemnity provision to be incorporated to the agreement, Mack Industries would have to expressly agree to it. *Id.* at 182–183.

-8-

Here, Mack Industries never expressly agreed to the indemnity clause. In fact, Mack expressly rejected it when they crossed out the provision in their signed correspondence in December. *See* Dkt. No. 28 at 3 (Pg. ID No. 260). Accordingly, the indemnity clause was not agreed to, and should not be enforced as a part of the contract.

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS** the Defendant's Motion for Summary Judgment.

IT IS SO ORDERED.

Dated: December 8, 2015　　　　　　　　　　　　s/Gershwin A Drain
Detroit, MI　　　　　　　　　　　　　　　　　　HON. GERSHWIN A. DRAIN
　　　　　　　　　　　　　　　　　　　　　　　United States District Court Judge